UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND | ) | |
| SURETY COMPANY OF AMERICA, | ) | |
| | ) | Civil Action No. 6: 04-116-DCR |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FIRST NATIONAL BANK AND TRUST, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of the motions for summary judgment filed by Plaintiff Travelers Casualty and Surety Company of America ("Travelers") [Record No. 37] and Defendant First National Bank and Trust ("FNB" or "the bank") [Record No. 40]. Because there are material, factual issues in dispute, the Court will deny a portion of both motions. However, in other instances, the factual issues do not preclude summary judgment. Accordingly, the motions will be granted, in part.

## I.    RELEVANT FACTS

In November 1993 and successive renewal periods, FNB completed and signed applications for a Financial Institution Bond ("FIB") with Reliance Insurance Company and its successor, Travelers. Based on these applications, Reliance and Travelers issued a FIB on behalf of the bank for the period September 1993 through September 2003. [Record No. 48] The bond provided that Travelers would indemnify the bank for any losses that resulted from the dishonest or fraudulent act of an employee acting alone or in collusion with others, provided the employee

-1-

had the manifest intent to cause the insured to sustain a loss and to obtain financial benefit for themselves or others.

In 1965 and 1978 respectively, FNB hired Janice M. George and Janice Faye Carson as bookkeepers.  [Record No. 41, pg. 1]  In October 1980, both women transferred to the newly-opened branch at Laurel Plaza (" the Laurel Branch").  In the mid-1980's, George was appointed manager of the Laurel Branch and Tim Dyche became assistant manager.  In 1990, Dyche transferred to the main office and Carson became the assistant manager at the Laurel Branch. [Record No. 41, pp. 2-3]

At some point prior to her appointment as Laurel Branch manager, George began taking money from the bank.  [Record No. 48, pg. 2]  George concealed her theft from other tellers and from Joel Yaden who was at that time the Laurel Branch manager.  [Record No. 41, pg. 2]  When Yaden transferred to the main bank to become the internal auditor, George began to fear her theft would be discovered.   George alleges that when she informed the bank's president, Coey Prichard, of her thefts, he agreed to make her a loan to replace the missing money.   However, George continued to take money.  And when Carson discovered George's later thefts, she also commenced to steal from the bank.

In 1994, George and Carson claimed that they obtained additional loans from Prichard to cover evidence of their thefts, though the amounts of the loan were less than the total amount of money taken. [Record No. 41, pp. 3-5]  George and Carson allege that Prichard helped them falsify the loan applications, taking out the loans in the names of family members, or with

insufficient collateral, in order to help them cover-up the thefts. *Id.*, pp. 5-6. George and Carson allege that at no time did Prichard threaten to report them or fire them. *Id.*, pg. 8.

Yaden, now the internal auditor, stated that Prichard directed him not to perform cash counts at the branches. Instead, the branch manager and head teller [George and Carson] would perform the audits locally. *Id.*, pp.8-9. George and Carson both alleged that had an audit been performed, their thefts would almost certainly have been discovered. Both also agreed that Prichard never received any money from the thefts. *Id.*, pp. 9-10. During this time, external audits were being performed by Strotham & Company, PSC ("Strotham") and later by Fields, Hawkins & Co. ("Fields"). [Record No. 37]

Prichard retired from the bank in January 2000. He denies each and every allegation made by George, Carson and Yaden. However, he states that he remembered being approached by George on behalf of her father, but did not authorize the renewal of that loan, nor did he sign any of the documents. [Record No. 41, pp.10-11] He also states that he made a loan to Carson's brother to enable him to pay-off a truck, but that Carson provided the information for the financial statement.

An October 2000 audit resulted in the discovery of the thefts. Madon, now president, called the FBI. After speaking with both George and Carson, the FBI notified Madon that Prichard had also been implicated. [Record No. 48] On October 11, Madon prepared a Suspicious Activity Report ("SAR") as required by law. However, he did not inform Travelers that the report had been prepared. Likewise, he did not advise Travelers of the information relayed to him by the FBI. *Id.*, pg. 12. Instead, on November 8, 2000 Madon prepared a Proof

of Loss ("POL") related to George and Carson thefts (which stated that both George and Carson had admitted to taking money) but made no mention of Prichard. *Id.*

On December 1, 2000, and as part of Traveler's investigation of the Proof of Loss, Robert Slepecky, and employee of Traveler's, asked Madon and FNB's counsel if they had any records or knowledge of prior dishonest acts committed by George or Carson while employees of FNB. Madon and the bank's counsel responded in the negative. [Record No. 48]

On December 11th, Travelers paid the bank $365,069.87 in satisfaction of the Proof of Loss. This sum represented the amount of the claim, less a $10,000.00 deductible per the terms of the FIB. As part of the payment and pursuant to the terms of the FIB, Travelers obtained a Release and Assignment (the "Assignment") from FNB. [Record No. 37, pg. 3] Travelers then filed suit against the outside accountants which FNB had employed to audit the bank under a theories of breach of contract and negligence. Specifically, as FNB's subrogee, Travelers alleged that but for the negligence of the accountants in failing to catch the irregularities in cash levels that resulted from the thefts of George and Carson, the bank would not have suffered the loss. In March 2004, the action was dismissed as untimely under the statute of limitations. [Record No. 37]

## II.   THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A

-4-

dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

"Once a moving party has met its burden, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.' " *Keeneland Ass'n, Inc. v. Earnes*, 830 F.Supp. 974, 984 (E.D.Ky. 1993), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.  *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002).

Once the movant has satisfied this burden, the non-movant must go beyond the assertions made in the pleadings and come forward with specific evidence to demonstrate that there is a genuine issue of material fact.  *Id.*  The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits to support its claims.  *Celotex*, at 324.  However, the trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact.  *In re Morris*, 260 F.3d 654 (6th Cir. 2002).   Rather, the nonmoving party has an affirmative obligation to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact.  *Id.*

In making this determination, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### III.    ANALYSIS

#### A.    First National Bank's Motion for Summary Judgment

Traveler's Complaint alleges three causes of action against FNB: breach of contract, misrepresentation, and fraud. These counts are based upon two primary allegations: (1) that the bank was not covered under the FIB for acts of theft by George or Carson because it had actual or constructive knowledge of those acts as early as the mid-1980's (Counts I and III); and (2) when it filed the Proof of Loss, FNB violated a duty to disclose by failing to mention the SAR submitted by Maden regarding the possible wrongdoing of Prichard. (Count II).

#### 1.    Counts I and III  (Misrepresentation)

The pleadings present factual disputes concerning *when* Prichard learned of George's and Carson's wrongful acts and the *extent* to which he allegedly helped cover-up the thefts. Travelers and FNB disagree over whether George and/or Carson told Prichard they were stealing from the bank. Normally, a disagreement regarding such facts might defeat summary judgment. However, as FNB notes in its memorandum, the question of what Prichard knew will be an important issue at trial but it is not "material" with respect to the pending motion for summary judgment. While the bank would be entitled to summary judgment if the parties agreed Prichard was never informed of the thefts, FNB might still be entitled to summary judgment even if Prichard *had been made aware* of the thefts by George and/or Carson. Thus, it is not necessary

-6-

to determine Prichard's level of knowledge for purposes of determining whether summary judgment is appropriate.

The dispositive question is whether Prichard's knowledge may be imputed to the Bank under an agency theory. Both parties cite *Hooker v. New Amsterdam Casualty Co.*, 33 F. Supp. 672, 674 (W.D.Ky. 1940), in support of their respective positions. In *Hooker*, *id.*, the court noted that a principal will be charged with the knowledge acquired by an agent while acting within the scope of his or her authority. However, the *Hooker* court also notes an exception to that rule: the principal will not always be imputed to have the knowledge of its agent where the agent acts adversely to the principal. *Id*.

FNB also cites a number of cases holding that a bank should not charged with the knowledge of one of its officers where that officer participated in the wrongdoing. *See Maryland Casualty Co. v. Tulsa Industrial Loan & Inv. Co.*, 83 F.2d 14 (10th Cir. 1936) (plaintiff had neither actual nor constructive knowledge of the theft where plaintiff's employee was acting for his own benefit and to defraud plaintiff); *Massachusetts Bonding & Ins. Co. v. Hudspeth*, 94 F.2d 467 (8th Cir. 1938) (only the knowledge of such officers as were not in collusion with the wrongdoer bound the debtor corporation to notify defendant insurer immediately of the basis of a claim). It appears that Kentucky courts apply the same standard. *See Ohio Valley Banking & Trust Co. v. Citizens' Nat'l Bank*, 173 Ky. 640, 651 (Ky. 1917) (principal is not charged with the knowledge of his agent when the latter is engaged in 'committing an independent, fraudulent act on his own account, and the facts to be imputed relate to this fraudulent act').

Under these authorities, if Prichard was acting in the best interests of the bank when he loaned George and Carson money to cover-up their thefts, then his knowledge of the thefts would be imputed to the bank. On the other hand, if Prichard was colluding with George and Carson to hide evidence with the specific intent or substantial probability of prejudicing the rights of the bank, then his knowledge would not be imputed to the bank.

As noted above, the question on summary judgment is whether a reasonable jury could find that Prichard was acting to protect the bank, whether from scandal, investigation, or for some other reason. At this point, the Court cannot say that no reasonable jury could find that Prichard was so motivated. The fact that his actions had the end result of hurting the bank when neither George nor Carson was able to make the payments on those loans is not enough for entry of summary judgment. As noted in *F.D.I.C. v. St. Paul Fire and Marine Ins. Co.*, 942 F.2d 1032, 1036 (6th Cir. 1991), there is a difference between fraud and bad business judgment.

For the same reasons, summary judgment concerning Count I of Traveler's Complaint is also inappropriate. To determine whether FNB breached the contract by submitting the POL, it must first be determined whether the bank is charged with Prichard's alleged knowledge of the thefts. Because a material factual issue is presented regarding such knowledge, FNB's motion concerning Count I will be denied.

As a result of the factual issues discussed above, the Court need not reach the bank's alternative argument concerning whether Prichard had the "manifest intent" to cause the bank a loss. However, issues of motivation would also preclude summary judgment. *See Peoples*

-8-

*Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 113 F.3d 629, 636 (6th Cir. 1997) As the Sixth

Circuit noted in Peoples Bank,

> Like our sister circuits, we recognize that reckless conduct might be evidence --
> a manifestation -- of intent.  But recklessness itself, without an inference of intent,
> would clearly not satisfy the language of the policy, any more than recklessness
> alone would create culpability for a crime requiring specific intent. . . .  And
> reckless conduct, taken as circumstantial evidence of intent, could suffice to
> defeat a motion for summary judgment by creating a factual question for the jury.
> The linkage between the reckless conduct and the loss to the insured, however,
> would have to be far tighter than in this case.

*Id.*

## 2.      Count III  (Fraud)

Traveler's alleges in Count II of its complaint that, by submitting the POL after Madon

had learned of George's and Carson's allegations against Prichard and by filing the SAR with

the FNB's board, FNB committed fraud.  FNB has moved for summary judgment with respect

to this claim, arguing that Travelers has failed to plead all of the necessary elements of an action

for fraud.  Specifically, FNB contends that even under the facts as pleaded by Travelers, it

cannot prove that Madon and FNB had a duty to disclose the existence of the SAR.

Both parties cite *Smith v. General Motors Corp.*, 979 S.W.2d 127 (Ky. App. 1998), which

lists the necessary elements of a fraud action under Kentucky law.  These elements are: (1) that

the defendant had a duty to disclose a material fact; (2) that the defendant failed to disclose the

material fact; (3) that the defendant's failure to disclose the material fact induced the plaintiff

to act; and (4) that the plaintiff suffered damages as a result.  There are no factual or legal

disagreements as to last three elements.  Further, the parties agree that FNB did not disclose the

existence of the SAR to Travelers when the POL was filed.  Thus, the only question is whether

FNB had a legal duty to disclose to Travelers that it had a suspicion of improper activity by its former president which might affect coverage under the FIB.  As this issue only presents a question of law, summary judgment is an appropriate manner of resolving of the claim.

Under well-established rules, an insurance policy is to be interpreted in favor of the insured as against the insurer.  *Fidelity & Deposit Co. of Maryland v. Courtney* 103 F. 599 (6th Cir. 1900), *citing American Surety Co. v. Pauly*, 170 U.S. 133, 144 (1898).  In *American Surety*, the Supreme Court held that, in order to trigger the notice provision required by the FIB, "suspicions of dishonest conduct" were not sufficient.  Not until the bank was "satisfied that the [employee] had committed acts of dishonesty or fraud likely to involve loss to the [bank]," was notice required.  *Id.*

Travelers does not allege that it suffered any additional loss by the acts of George, Carson or Prichard between the date the SAR was filed and the date of which they learned of the allegations made against Prichard.  Instead, it claims that FNB had a duty to disclose the existence of the SAR when filing its proof of loss.  The weight of authority on this question holds that the insurer is not liable for loss resulting from a default of the employee which occurred after the employer should have given notice of prior dishonesty.  23 A.L.R.2d 1065. At the time at which Travelers alleges notice should have been given, Prichard was no longer employed by the bank.  Thus, FNB and Travelers could not have suffered any additional loss.

Furthermore, FNB was prohibited by federal law from disclosing the existence of the SAR. 12 C.F.R. §21.11(k) provides that:

> Confidentiality of SARs. SARs are confidential. Any national bank or person subpoenaed or otherwise requested to disclose a SAR or the information

> contained in a SAR shall decline to produce the SAR or to provide any
> information that would disclose that a SAR has been prepared or filed, citing this
> section, applicable law (*e.g.*, 31 U.S.C. 5318(g)), or both, and shall notify the
> OCC.

The plain language of §21.11(k) prohibits Maden or anyone else at the bank, or any member of the local, state or federal government who had knowledge of the existence of the SAR from disclosing details that would suggest a SAR had been filed.  Because FNB had no duty to disclose the suspicion of wrongdoing, and alternatively, was prohibited from disclosing the existence of the SAR, FNB's Motion for Summary Judgment as to Count II of Traveler's Complaint will be granted.

## B.      Traveler's Motion for Summary Judgment

FNB has filed a Counterclaim against Travelers in which it asserts that: (1) Travelers was negligent in the prosecution of an action against Strotham and Fields by filing after the statute of limitations had expired; (2) Travelers violated the Kentucky Unfair Claims Settlement Practice Act by demanding that FNB refund the money paid out under the FIB; and (3) Travelers demand of refund is made in bad faith.  Each count will be addressed in the order presented.

## 1.      Count I  (Negligence)

FNB asserts that, as a result of negligence by Traveler's agents, employees and attorneys, the prior action brought by Travelers against Strotham and Fields (FNB's accountants) was dismissed as untimely.  But for this alleged negligence, the bank contends that Travelers and FNB would have recovered all or part of their losses from those accounting firms.  Resolution of this question presents mixed questions of law and fact.  However, because the Court finds that

there are material issues of fact that are disputed, summary judgment will be denied with respect to Court I of the bank's Counterclaim.

To establish a claim for negligence, a plaintiff must show that: (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breached caused the plaintiff damages. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). The third element usually consists of two parts: actual injury and legal causation. *Lewis v. B&R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001).

Here, the issue of duty is a question of law to be determined by this Court. The second, (*i.e.*, breach) is a question of fact. The third element (*i.e.*, injury) presents a mixed question of law and fact. Whether the plaintiff suffered an injury is a fact determination, while causation presents a mixed question of law and fact. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003), *citing Deutsch v. Shein*, 597 S.W.2d 141, 145 (Ky. 1980).

In *Pathways*, the Supreme Court of Kentucky held that:

> for Pathways to be entitled to judgment as a matter of law, it must show that (1) it was impossible for [plaintiff] to produce any evidence in her favor on one or more of the issues of fact, *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991); (2) under the undisputed facts of the case, it owed no duty to [the plaintiff] *see Ashcraft v. Peoples Liberty Bank & Trust Co., Inc.*, 724 S.W.2d 228, 229 (Ky. App. 1986) ("if no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence"); or (3) as a matter of law, any breach of a duty it owed to [defendant] was not a legal cause of her injuries.

*See id.*

As an initial matter, the Court must determine whether Travelers owed a duty to FNB to prosecute the action against the certified public accountants. As has been long-recognized,

-12-

defining the scope of a duty owed is a question of foreseeability. *Palsgraff v. Long Island Railway Co.*, 248 N.Y. 339 (1928). Here, this question turns on the Release and Assignment that Travelers requested from FNB; namely, whether the terms of that assignment create a duty from Travelers to FNB.

The terms of the Assignment provide that, "[FNB] shall deliver, if so requested by [Travelers], an assignment of such of the insured's rights, title and interest and causes of action as it has . . ." The Assignment outlines how the recovery, if any, shall be applied to the loss at hand. It provides that FNB will recover any amount of loss above the claim as paid by Travelers, then to Travelers to reimburse it for any settlement paid out, then to FNB to recover the deductible amount. [Record No. 50, pg. 3] In light of the specific language of the Assignment, this Court concludes that Travelers voluntarily assumed a duty to FNB to prosecute the action. Having voluntarily assumed that duty, Travelers cannot carelessly abandon it without incurring liability for any resulting injury. *Louisville Cooperage Co. v. Lawrence*, 313 Ky. 75, 78 (Ky. 1950).

A timely and successful prosecution of the action against the accountants could have meant recovery in full, both for Travelers and for FNB. And while FNB's recovery would have been limited to the $10,000.00 deductible amount, that remains a duty Travelers assumed. Although Travelers argues that FNB could have brought its own action against the accountants, it is certainly foreseeable, given the language of the Assignment, that they would not do so. Having assigned its causes of action to Travelers, Travelers could reasonably foresee FNB relying on that language and not prosecuting an independent action.

-13-

Having determined that a duty did exist from Travelers to FNB, the determination of whether Travelers acted negligently is one left to the trier of fact. This Court cannot determine with any degree of certainty whether Travelers acted negligently. While there is some evidence that Travelers may have acted negligently, there is also evidence that FNB may have contributed to the loss which resulted. Again, however, these determinations must be left to the trier of fact.

### 2.    Count II (Kentucky Unfair Claims Settlement Practice Act)

FNB also alleges that Travelers, acting through its attorney, violated the Kentucky Unfair Claims Settlement Practice Act (the "Act"). K.R.S. 304.12-230. Specifically, FNB alleges that E.A. "Seth" Mills Jr. misrepresented two provisions of the FIB during a meeting with the directors and officers of FNB on March 19, 2003. It claims that those misrepresentations were a violation of K.R.S. 304.12-230(1).

Under Kentucky law, a cause of action under the Act may arise where the representative of the insurer misrepresents the terms or provisions of an insurance policy. *See Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 372 (Ky. 2001). The meaning and legal effect of the policy language are questions of law for the court. *Id.* at 377. As noted above, this Court agrees with FNB that the meaning of the provisions of the FIB are clear and unambiguous. Prichard is an employee under its terms, and he need not personally benefit financially to be in collusion with others. Despite this determination, summary judgment is not appropriate because it is unclear what words Mills used in the meeting, or his manner in conveying Traveler's demand for a return of the payment. FNB makes clear allegations which, if true, could constitute a misrepresentation under the Act. Travelers does not directly deny in its reply that Mills made

-14-

the alleged statement.  However, it seems to dispute FNB's characterization of the meeting. [Record No. 50, pg. 7]  This dispute is sufficient to create a material issue of fact which precludes summary judgment concerning this count.

### 3.    Count III  (Bad Faith)

Count III of FNB's Counterclaim alleges that, by attempting to rescind payment, Travelers acted in bad faith.  To maintain a common law claim for bad faith, FNB must establish: (1) Travelers obligation to pay; (2) that Travelers lacked a reasonable basis for failing to immediately pay; and (3) that Travelers knew it had no reasonable basis to delay payment or acted in reckless disregard regarding whether such a basis existed.  *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).  A claim for bad faith cannot be maintained as a matter of law if Travelers claim is "fairly debatable"under the law or undisputed facts.  *Id.*

In a similar case from the Tenth Circuit, the court of appeals held that when viewing the evidence in the light most favorable to the insured, where it appears that a legitimate dispute existed over the terms included in the policy agreement, summary judgment is appropriate. There, the dispute concerned the issue of what constituted collusion and participation.  *Adair State Bank v. American Casualty Co.*, 949 F.2d 1067, 1077 (10th Cir. 1991).  The court held that, as a matter of law, the insurer's refusal to pay was not unreasonable, and the insurer was entitled to summary judgment as to the claim of bad faith.  *Id.*

Here, it is clear that Travelers has a "fairly debatable" claim given the allegations of George and Carson against Prichard.  The dispute over Prichard's level of knowledge and intent if he had knowledge demonstrates there is a clear debate over whether or not FNB violated the

-15-

terms of the FIB.  And where the moving party can show there is a reasonable debate on either the law or the facts, summary judgment is appropriate. *Sculimbrene v. Paul Revere Ins. Co.*, 925 F. Supp. 505, 509 (E.D.Ky. 1996). Therefore, Summary Judgment will be granted regarding Count III of FNB's Counterclaim.

**IV.    CONCLUSION**

For the reasons discussed herein, it is **ORDERED** as follows:

(1)    First National Bank's motion for summary judgment regarding Counts I and III of Traveler's amended complaint [Record No. 40] is **DENIED**;

(2)    First National Bank's motion for summary judgment regarding Count II of Traveler's amended complaint [Record No. 40] is **GRANTED**.  This count shall be dismissed with prejudice;

(3)    Traveler's motion for summary judgment regarding Counts I and II of First National Bank's amended counterclaim [Record No. 37] is **DENIED**;

(4)    Traveler's motion for summary judgment regarding Count III of First National Bank's amended counterclaim [Record No. 37] is **GRANTED**.  This count shall be dismissed, with prejudice.

(5)    Travelers' motion for an extension of time [Record No. 42] is **GRANTED**.

This 13th day of September, 2005.



Signed By:

*Danny C. Reeves*  DCR

**United States District Judge**